## THE SEGURANCA.

### (District Court, E. D. Louisiana. January 24, 1916.)

### No. 15328.

SHIPPING ☞51—BREACH OF CHARTER—LIEN OF CHARTERER.

Where the master of a vessel agreed with the charterer to collect freight on a portion of the cargo on delivery, and to pay to the charterer the difference between the freight so collected and the charter rate, such agreement amounted to a waiver of a provision of the charter party requiring payment of freight in advance, if demanded, and the charterer has a lien on the vessel for the sum so collected and not paid over, which may be enforced by suit in rem.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210; Dec. Dig. ☞51.]

In Admiralty. Suit by George W. Howe & Co. against the steamship Seguranca and others. On exceptions to libel. Overruled.

John C. Avery, of Pensacola, Fla., and Grant & Grant, of New Orleans, La., for libelants.

John C. Hollingsworth, of New Orleans, La., for respondents.

FOSTER, District Judge. In this case libelants substantially allege that they chartered the steamship Seguranca for a voyage between Pensacola, Fla., and London, England, and, with the authority of the owners of the steamship, relet part of the space; that in accordance with the terms of the charter party libelants paid full freight to the master of the ship on the cargo shipped by them, but the Pensacola Lumber & Timber Company, which had sublet part of the space, desired to pay freight upon its shipment on arrival at London; that the master and agents of the steamship agreed with the libelants that the master should collect freight on that part of the cargo on delivery, and the master gave libelants a five-days arrival note against the freight for the difference between the charter rate and the rate paid by the shipper, amounting to £2,192. 5. 7.; that the ship proceeded to London, made delivery of her cargo, and the master collected the freight as obligated by the five-days note, but, though admitting the collection of £1,450, remitted no part of same to libelants.

The libel further alleges that under the terms of the charter party the ship was required to take not less than 1,008 standards of lumber, but was expected to take more; that the cargo was ordered alongside the ship by the master at Pensacola, and was furnished to more than the amount of 1,008 standards of lumber, or the equivalent, as agreed upon; but when the vessel had only loaded 709 standards the

master refused to receive or permit to be loaded a large part of the cargo then alongside, and libelants, for the purpose of fulfilling the contracts for delivery of same in London, were compelled to secure other means of transporting it, and did so at a cost greater than if it had been taken by the steamship, and they claim on that ground $843.89.

The ship being in the port of New Orleans, admiralty process issued against her, and she was seized. The owners of the ship, through the master, filed a claim for her, and in the usual course she was released on bond. The respondents have filed an exception, setting up that the allegations of the libel do not disclose any admiralty lien upon said vessel and constitute solely an action in personam, and that the court is without jurisdiction to proceed in rem against the vessel.

Respondents rely upon the clause of the charter party that full freight is to be prepaid at the port of loading, on the signing of the bills of lading, if required by the owners, and, further, on paragraph 4 of the charter party, which stipulates for an advance of cash to the master by the charterers for his ordinary disbursements, such advances to be indorsed upon the bills of lading on account of freight, but no draft to be given for such advances; and they say that the master was therefore entirely without authority to sign the five-days note.

The rule is that the freight and vessel are reciprocally bound to each other, and that breaches of charter give rise to liens on vessels, but there are cases denying the lien where the breach of charter has been of a nonmaritime character. However, it has always been held that claims growing out of contracts of affreightment may be properly enforced against the vessel, and there are many cases illustrating the various kinds of claims that have been so adjudicated. The instant case presents but a variation of the usual controversy between charterer and vessel, though perhaps the exact facts may not have been adjudicated before in any of the reported cases. The stipulation in the charter party regarding the collection of freight in advance, of course, could be waived by the vessel, and the master had implied authority to do so. Having done so, the claim of the charterers against the vessel arises from the agreement of the master to collect the freight in their behalf and remit them the difference, and does not arise from the execution of the note. For the purposes of this case, the five-days note may be treated simply as evidence of the amount arrived at by the parties in the settlement between the master and the charterers. It is a well-known custom of the port of New Orleans for the master to give such notes, and his doing so would not take the case out of the usual rule, even conceding that the master had no authority to sign it. Clause 4 of the charter relied upon refers to advances made to the vessel, and has no application to the note here given. With regard to the second cause of action, the allegations show a clear breach of the charter, and there could be no question that the claim to that extent could be enforced in rem.

The exception to the libel will be overruled.